UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| JOHN FREDETTE, </br></br> Petitioner, </br></br> v. </br></br> MATTHEW DIVRIS, </br></br> Respondent. | Civil No. 4:21-cv-11678-MRG |

### ORDER ON PETITION FOR THE WRIT OF HABEAS CORPUS

**GUZMAN, J.**

    This is a habeas case. Petitioner John Fredette ("Fredette") filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 ("§ 2254") challenging his 2014 conviction in Massachusetts state court for murder in the second degree. [ECF No. 1]. Fredette argues that his conviction should be set aside on two different grounds: **(1)** because the Massachusetts trial court violated his Fifth, Sixth, and Fourteenth Amendment rights by failing to provide a specific joint venture instruction to the jury, and **(2)** because there was insufficient evidence of actual or constructive force to support a conviction for the predicate offense of kidnapping. [Id. at 6–8]. Respondent Matthew Divris ("Respondent") is the Superintendent at North Central Correctional Institution ("NCCI") where Fredette is incarcerated. Respondent has filed an opposition [ECF No. 20] to Fredette's habeas motion. For the following reasons, Fredette's petition for writ of habeas corpus is **DENIED**.

I.  **BACKGROUND**

   A.  **Relevant Facts**

When a state court rules on a factual issue, a federal habeas court must presume that determination to be correct. 28 U.S.C. § 2254(e)(1); see, e.g., Webster v. Gray, 39 F.4th 27, 29 (1st Cir. 2022). This presumption extends to state appellate courts conducting direct review. Id. Indeed, as the First Circuit has explained, "[a] habeas petitioner therefore must clear a high hurdle before a federal court will set aside any of the state court's factual findings," Mastracchio v. Vose, 274 F.3d 590, 598 (1st Cir. 2001), and the petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence, 28 U.S.C.S. § 2254(e)(1).

Here, the Massachusetts Appeals Court ("MAC") provided the last reasoned state court decision. See Commonwealth v. Fredette, 145 N.E.3d 171, 176 (Mass. App. Ct. 2020). In that decision, the MAC recited the facts as they had been summarized by the Supreme Judicial Court of Massachusetts ("SJC") in an earlier appeal in this case. See Commonwealth v. Fredette, 101 N.E.3d 277 (Mass. 2018). The MAC noted that the SJC's summary was based on "the facts the jury could have found as set forth by the judge in her decision on the defendant's motion for a new trial, supplemented with uncontroverted testimony from the trial." Fredette, 145 N.E.3d at 176. Both parties agree with and adopt the factual determinations made by the MAC, [see ECF No. 17 at 4; ECF No. 20 at 8–10]. The Court will do the same.
The MAC stated the facts as reproduced below:

> In Fredette, 480 Mass. at 77-78, the Supreme Judicial Court summarized the facts the jury could have found as set forth by the judge in her decision on the defendant's motion for a new trial, supplemented with uncontroverted testimony from the trial. Those facts were as follows:
>
>> "On the evening of February 15, 1994, the victim walked out of a bar in Worcester, leaving behind his favorite Boston Celtics jacket, house keys, a

package of cigarettes, and an unfinished beer. He was never seen again. The victim's disappearance remained unsolved for eighteen years. On February 15, 2012, a Worcester County grand jury returned an indictment charging the defendant with murder. Matteo Trotto and Elias Samia, two of the defendant's cohorts in his illegal drug operation, were also indicted for the murder.

"The defendant had been arrested for trafficking in cocaine a few months before the victim disappeared, following an undercover investigation into the defendant's drug operation. The defendant and Trotto believed that the victim might have been the informant who provided the police with information leading to the defendant's arrest. To evade conviction, the defendant and Trotto concocted a scheme to have the victim testify on the defendant's behalf and offer an exculpatory, perjured story. According to this plan, the victim would testify that he was the confidential informant who provided the information to the police that established probable cause to arrest the defendant, and explain that the information he provided was false. To ensure that the victim would testify, the defendant and Trotto gave him copious amounts of cocaine, while also threatening his life.

"On the day of the defendant's trial, the victim never appeared in court to testify. As a result, on February 14, 1994, the defendant pleaded guilty to a reduced offense. He was sentenced to a State prison sentence, but execution of that sentence was stayed.

"On the evening of February 15, 1994, the victim was sitting in the bar when Trotto appeared, coaxed the victim outside, and ushered him into a motor vehicle occupied by the defendant and Samia. Soon after the victim entered the vehicle, the defendant and Samia began severely beating him. In the course of the beating, Samia shot and killed the victim. The defendant, Samia, and Trotto buried the victim's body in a shallow grave. The victim's body was never recovered." (Footnote omitted.)

Fredette, 145 N.E.3d at 176. The MAC also made independent findings that it added to its recitation of the facts, including abundant corroborative evidence, motive evidence, and consciousness of guilt evidence produced by the Commonwealth.[1] Id. at 176–77.

---

[1] Notably, the evidence included information the jury heard about the dismantling of the vehicle used in the crime, the disposal of the vehicle's parts in a nearby pond, and the 2005 discovery of those parts in the same pond. See Fredette, 145 N.E.3d at 176, n. 4. Additionally, there was evidence of the threats made by the defendants to the victim, warning him not to appear in court to testify on the defendant's behalf. Id. at 177. Further testimony also revealed a 2008 conversation between the

3

B. **Procedural Background**

As with the factual history, the parties concede that the MAC "accurately described the procedural history in the Superior Court." [ECF No. 17 at 2; see ECF No. 20 at 3–8]. Following a 2014 trial in the Superior Court, Fredette was convicted of first-degree felony-murder, with aggravated kidnapping as the predicate felony. Fredette, 145 N.E.3d at 175. "During the pendency of his appeal to the SJC, the defendant filed a motion for a new trial contending that the trial judge erred in not providing a merger doctrine instruction to the jury *sua sponte*, and that trial counsel rendered ineffective assistance." Id. The defendant then filed a separate amended motion for a new trial, alleging further instances of ineffective assistance of trial counsel and arguing that the aggravated kidnapping charge merged with the killing, making it ineligible as the predicate felony for the felony-murder conviction. Id. at 175 n. 1 (citing Fredette, 101 N.E.3d at 280–81)). The motion judge, who was also the trial judge, granted the motion, finding that the lack of a merger instruction created a substantial risk of a miscarriage of justice. Fredette, 145 N.E.3d at 175. Upon reviewing the Commonwealth's appeal, in June 2018, the Supreme Judicial Court ("SJC") concluded that: (1) the judge erred in granting the motion for a new trial, but (2) vacated the first-degree murder conviction, determining it was improperly based on a retroactively applied theory of aggravated kidnapping—a theory first established in 1998, four years after the defendant committed the killing in 1994.[2] Id. at 175 (citing Fredette, 101 N.E.3d at 277). As a result, the SJC remanded the case to the Superior Court to determine "whether the record supported a finding of murder in the second degree or whether a

---

defendant and Samia, in which they acknowledged beating the victim in and admitted to the killing. Id. at 177 n. 5.

[2] Specifically, "[t]he court was referring to Mass. Gen. Laws ch. 265, § 26, third par., inserted by St. 1998, c. 180, § 63; the murder of which the defendant was convicted occurred in 1994." Fredette, 145 N.E.3d at 175, n. 2.

new trial was 'necessary and appropriate in these circumstances.'" Id. at 175 (citing Fredette, 101 N.E.3d at 288).

Following the SJC decision, Fredette filed a motion new trial on grounds raised in the initial hearing with the motion judge, as the motion judge had never issued a decision on those grounds. Id. at 175-76, n. 3. This renewed Fredette's arguments. Id. Upon remand, the trial judge denied the motion for a new trial and issued an order reducing Fredette's conviction to murder in the second degree "based on a theory of felony-murder, with [unaggravated] kidnapping being the predicate felony." Id. at 175–76 (quoting Fredette, 101 N.E.3d at 289–90) (internal citations omitted) (alterations in original). Fredette timely appealed therefrom. Id. at 176. On appeal, the petitioner raised four claims:

> (1) the judge erred in declining to instruct the jury on accessory after the fact to murder, and on assault and battery as a lesser included offense; (2) there was insufficient evidence of force to prove the underlying felony of kidnapping; (3) the judge erred in admitting hearsay evidence under the state of mind exception; and (4) trial counsel rendered ineffective assistance.

Id. at 175. On March 25, 2020, the MAC rejected each of the Petitioner's claims and affirmed his convictions for murder in the second degree. Id. The MAC noted that, although the SJC's decision in Commonwealth v. Brown, 81 N.E.3d 1173 (Mass. 2017) eliminated felony-murder in the second degree as a theory of murder, Brown did not apply to the Petitioner's case because his case was tried before Brown was decided. Fredette, 145 N.E.3d at 185–86. Furthermore, in assessing Fredette's jury instruction claim on accessory after the fact, the MAC determined that it had been waived because trial counsel had not requested such an instruction. Id. at 177. In making its decision, the MAC correctly distinguished between the objection at the trial court based on a failure to include a "joint venture instruction" separating actions after the crime and the claim on appeal that an "accessory after the fact" instruction should have been given. Id.

5

On May 26, 2020, Fredette filed an application for leave to obtain further appellate review ("ALOFAR") with the SJC. [ECF No. 17 at 3]. In the ALOFAR, Fredette argued: (1) that the "trial court should have instructed the jurors that they could not convict Fredette of murder if his participation on the alleged joint venture did not commence until after the killing and if such participation was limited to concealing the murder"[3]; and (2) that the "evidence failed [to] support the predicate felony of kidnapping in the absence of evidence of actual or constructive force." [ECF No. 1 at 4]. The SJC denied Fredette's ALOFAR on July 27, 2020. On October 14, 2021, Fredette filed the instant habeas petition pursuant to 28 U.S.C. § 2254. [ECF No. 1].

## II.  LEGAL STANDARDS

### 1. *The Antiterrorism and Effective Death Penalty Act Standard ("AEDPA")*

Since April 24, 1996, the Antiterrorism and Effective Death Penalty Act ("AEDPA") controls habeas review. This Act commands district courts to deny a habeas petition unless the decision "was contrary to, or involved an unreasonable application of, clearly established Federal law" or "was based on . . . unreasonable [factual] determination[s]." 28 U.S.C. § 2254(d)(1)-(2). For a state court decision to be contrary to Federal law, "it either applies a test that is inconsistent with one announced by the [Supreme] Court or reaches the opposite conclusion on materially indistinguishable facts." Rashad v. Walsh, 300 F.3d 27, 34–35 (1st Cir. 2002). Meanwhile, a decision is unreasonable where "the state court identifi[ed] the correct governing legal principle . . . but unreasonably applie[d] that principle" when viewed objectively. Williams v. Taylor, 529 U.S. 362, 365 (2000). The state court decision must have "some increment of incorrectness beyond error" that is "great enough to make the decision unreasonable in the independent and objective judgment of the federal court" that is

---

[3] The text of this paragraph is missing certain letters in some of the words. This Court has reconstructed the words as accurately as possible.

reviewing the habeas petition. McCambridge v. Hall, 303 F.3d 24, 36 (1st Cir. 2002) (quoting Francis S. v. Stone, 221 F.3d 100, 111 (2nd Cir. 2000)). Indeed, "[t]he standard for evaluating the state court's decision is 'highly deferential,' with 'the presumption that state courts know and follow the law' and the requirement that the decisions of the state court 'be given the benefit of the doubt.'" Simpson v. Spencer, 372 F. Supp. 2d 140, 145 (D. Mass. 2005) (quoting Woodford v. Visciotti, 537 U.S. 19, 24 (2002)).

In the same vein, factual determinations by the state court are presumed to be correct. 28 U.S.C. § 2254(e)(1). The burden is on the petitioner to rebut the presumption of correctness by clear and convincing evidence. Id.; see Teti v. Bender, 507 F.3d 50, 58 (1st Cir. 2007). If the petitioner cannot clear this hurdle, then the state fact findings must be given credit by the habeas court. Rashad, 300 F.3d at 35.

### 2. *Exhaustion Requirement*

Federal courts "will not entertain an application for habeas relief unless the petitioner first has fully exhausted his state remedies in respect to each and every claim contained within the application." Adelson v. DiPaola, 131 F.3d 259, 261 (1st Cir. 1997) (citing Rose v. Lundy, 455 U.S. 509, 518–19 (1982). The exhaustion requirement provides "the State the opportunity to pass upon and correct alleged violations of its prisoners federal rights." Baldwin v. Reese, 541 U.S. 27, 29 (2004) (internal quotations omitted). "Where, as here, a state's highest court offers discretionary review, a petitioner must present that court with the opportunity to review the federal claim to have exhausted available state remedies." Josselyn v. Dennehy, 475 F.3d 1, 3 (1st Cir. 2007) (citing Baldwin, 541 U.S. at 29).

The SJC has the power of discretionary review over decisions of the MAC. An unsuccessful party before the MAC seeks discretionary review from the SJC by filing an ALOFAR. Mass. R. App.

7

P. 27.1(b). The ALOFAR must include "a statement of the points with respect to which further appellate review of the decision of the appeals court is sought." Id. 27.1(b)(4). The ALOFAR is "the decisive pleading" for purposes of determining whether the petitioner has satisfied the exhaustion requirement. Adelson, 131 F.3d at 263. However, the First Circuit has emphasized that "[r]aising a claim for the first time to the state's highest court on discretionary review is not fair presentation for purposes of exhaustion. Gunter v. Maloney, 291 F.3d 74, 81 (1st Cir. 2002) (citing Castille v. Peoples, 489 U.S. 346, 351 (1989) (holding that "where the claim has been presented for the first and only time in a procedural context in which its merits will not be considered," it has not been fairly presented)). The SJC denied Fredette's ALOFAR without comment. Commonwealth v. Fredette, 150 N.E.3d 1131 (2020). Where, as here, a state's highest appellate court denies an application for further review without comment, the federal court should "look through" that judgment to identify, and conduct Section 2254 review upon, the last reasoned state court decision. Ylst v. Nunnemaker, 501 U.S. 797, 805 (1991). The last reasoned state court decision in this case is the MAC's order in Commonwealth v. Fredette, 145 N.E.3d 171, 176 (Mass. App. Ct. 2020). Accordingly, that decision is subject to review. Janosky v. St. Amand, 594 F.3d 39, 47 (1st Cir. 2010) ("Because the SJC summarily denied further appellate review, we look to the last reasoned state-court decision—in this case, the MAC's rescript.").

### III.    DISCUSSION

#### A.    The "Joint Venture" Jury Instruction Claim

Fredette contends that habeas relief is warranted because the trial court should have instructed the jurors that "they could not convict him of murder if his participation in the alleged joint venture did not commence until after the murder and was limited to concealing the killing." [ECF No. 1 at 6;

8

ECF No. 17 at 8].[4] The Respondent argues that this "joint venture claim" is unexhausted because it was never raised in Petitioner's brief to the MAC, and that even if the claim was deemed exhausted, it lacks merit. [ECF No. 20 at 14–15].

The Court agrees that Fredette failed to fairly present this claim for purposes of exhaustion. It is well-settled that "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in *each appropriate state court*[.]" Baldwin, 541 U.S. at 29 (emphasis added). Here, Fredette did not present his "joint venture claim" to the MAC, but instead argued that the jury should have been instructed on accessory after the fact. The MAC reviewed this "accessory claim" only for "substantial risk of a miscarriage of justice" because an "accessory instruction" was never requested during trial. Fredette, 145 N.E.3d at 177. In reaching its holding, the MAC correctly differentiated between the "joint venture instruction" requested at trial and the "accessory instruction" briefed to the MAC. Id.

Fredette concedes that his appellate counsel requested an "accessory instruction," but argues that such framing is irrelevant because his appellate counsel clearly argued that the trial court should have distinguished between a joint venture to commit murder and a joint venture to conceal the crime. [ECF No. 17 at 9–10]. However, this argument fails for two reasons. First, even if the appellate counsel discussed the "joint venture claim," it was omitted from Fredette's brief to the MAC. "A claim is waived if it is not argued with adequate detail in the plaintiff's appellate brief." Brown v.

---

[4] Fredette also attempts to argue in his memorandum that by failing to "instruct as to whether he was guilty of no more than accessory after the fact, the trial court" deprived Fredette of his constitutional rights. [ECF No. 17 at 12]. However, Fredette never raised this "accessory claim" in his habeas petition [ECF No. 1] and the Court need not consider it. See Logan v. Gelb, 790 F.3d 65, 70 (1st Cir. 2015) ("[Petitioner] also failed to include this argument in his habeas petition; it is thus waived.").

OneWest Bank, FSB, No. 13-P-1185, 2014 Mass. App. Unpub. LEXIS 921, at *9 n.9 (Mass. App. Ct. Aug. 14, 2014); see also Pinero v. Medeiros, No. 3:16-cv-30032-TSH, 2019 U.S. Dist. LEXIS 45153, at *29 (D. Mass. Feb. 25, 2019) ("[B]ecause Petitioner did not raise his . . . claim in his brief to the MAC and the MAC did not *sua sponte* address such a claim, Petitioner could not raise the issue as of right in his application for further appellate review."). Second, the MAC did not address or consider the "joint venture claim" and only focused on the "accessory claim." The law is clear that "an issue cannot be said to have been 'fairly presented' if the court is not given an opportunity to consider the arguments on both sides of it." Mele v. Fitchburg Dist. Court, 850 F.2d 817, 822 (1st Cir. 1988).

Accordingly, Fredette's "joint venture" claim is deemed unexhausted because it was never fairly presented to the MAC. See Baldwin, 541 U.S. at 29. Although this conclusion renders this petition a "mixed" one subject to dismissal, the Court shall not dismiss the petition at this stage but rather go forward with the remaining claims pursuant to 28 U.S.C. § 2254(b)(2).[5]

### B.     The Sufficiency of Evidence Claim

Fredette also contends that the evidence at trial was legally insufficient to support his felony-murder conviction. He alleges that evidence presented at trial "failed to prove actual or constructive force," required to establish the predicate kidnapping offense. [ECF No. 1 at 8]. Challenges to the sufficiency of the evidence on direct review require courts to ask "whether, after viewing the evidence in light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979)

---

[5] "An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2); see also Sullivan v. Saba, 840 F. Supp. 2d 429, 433 (D. Mass. 2012) ("The court also has the discretion to deny, but not grant, a mixed petition.").

(emphasis in original). In evaluating the sufficiency of the evidence, Massachusetts courts employ a standard set forth in Commonwealth v. Lattimore, 393 N.E.2d 370 (Mass. 1979). The First Circuit has held that standard to be "functionally identical" to that articulated by the Supreme Court in Jackson v. Virginia. Logan, 790 F.3d at 71. Therefore, when the MAC reviews for Lattimore error, it simultaneously "answer[s] the federal constitutional question." Roman v. Mitchell, 924 F.3d 3, 6 n.1 (1st Cir. 2019) (quoting Housen v. Gelb, 744 F.3d 221, 225 (1st Cir. 2014)).

Reasonable inferences that may be drawn from the evidence must also be viewed in light most favorable to the prosecution. Morgan v. Dickhaut, 677 F.3d 39, 47 (1st Cir. 2012) (quoting United States v. Andujar, 49 F.3d 16, 20 (1st Cir. 1995)). For a federal habeas petitioner, the applicant must overcome a standard of review that is "twice-deferential." Parker v. Matthews, 567 U.S. 37, 43 (2012). The petitioner must show (1) that the evidence introduced at trial fell short of the standard articulated in Jackson and (2) that the state court unreasonably determined otherwise. See, e.g., Linton v. Saba, 812 F.3d 112, 123 (1st Cir. 2016) ("[A] state court decision rejecting a sufficiency challenge may not be overturned on federal habeas unless the 'decision was objectively unreasonable'" (quoting Parker, 567 U.S. at 43)). "Unreasonable" means that the decision "evinces some increment of incorrectness beyond mere error." Winfield v. O'Brien, 775 F.3d 1, 8 (1st Cir. 2014) (quoting Leftwich v. Maloney, 532 F.3d 20, 23 (1st Cir. 2008)).

In order to convict Fredette of felony-murder in this case, "the Commonwealth first had the burden to establish that the defendant was a participant in a felonious enterprise[.]" Commonwealth v. Ortiz, 560 N.E.2d 698, 700 (Mass. 1990). Here, the predicate felony was unaggravated kidnapping. To support a conviction for kidnapping, the Commonwealth must prove that the defendant "(1) without lawful authority, (2) forcibly confined the victim (3) against [his] will." Commonwealth v. Boyd, 897 N.E.2d 71, 75 (Mass. App. Ct. 2008). In the context of kidnapping, "there need not be

11

physical force applied against the victim; if the victim is subdued by the display of potential force, [that] is sufficient." Commonwealth v. Titus, 587 N.E.2d 800, 804 (Mass. App. Ct. 1992) (quotation marks and citations omitted).

Fredette argues that his conviction of kidnapping was based on "mere speculation" and that there was not any "sufficient evidence as to the underlying offense of kidnapping." [ECF No. 17 at 18]. Fredette insists that the Commonwealth offered no evidence that the victim entered or remained in the vehicle because of any actual or constructive force. [Id. at 13].

The question for this Court is whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Morgan, 667 F.3d at 53 (quoting Jackson, 433 U.S. at 319). Courts may not "second guess a jury's verdict where it has chosen a reasonable interpretation of the evidence before it." Id. at 54. In this case, there was sufficient evidence from which a jury could make a reasonable inference that force was used against the victim. The evidence provided that on the night of the incident, witnesses saw the victim being "steered" towards the front seat and "physically 'ushered'" into the car. Fredette, 145 N.E.3d at 180. Testimony similarly revealed that the victim left behind his personal belongings and that he would have taken if he intended to voluntarily leave the bar. Id. This evidence is sufficient to allow a reasonable juror to infer that force was used on the victim.

Furthermore, Fredette has also not demonstrated that the MAC's analysis of this evidence was unreasonable. See Magraw v. Roden, 743 F.3d 1, 7 (1st Cir. 2014) ("In conducting its review of a state-court conviction for evidentiary sufficiency, a habeas court may not freely reweigh competing inferences but must accept those reasonable inferences that are most compatible with the jury's verdict."). On direct review, the MAC determined that the evidence was sufficient to prove the element of force beyond a reasonable doubt:

> The victim thwarted the defendant's plan and failed to appear to testify on the defendant's behalf. As a result, the victim was "afraid" that the defendant and Trotto would "come after [him]." He was in fear because he "had screwed up with big shots." He was "[v]ery nervous" and knew that Trotto "was somebody you don't cross." On the night of the incident, the victim was at a Worcester bar. A car pulled up across the street. There were three people in the car. Trotto exited the car and went to the front door of the bar, and peered inside as if he were looking for someone. Trotto then entered part of the way into the bar and "motioned to [the victim]." Trotto held up one finger and pulled it toward his body "in a motion that indicates he was drawing [the victim] towards him." The victim "left the bar and went outside with [Trotto]." Trotto and the victim "were walking very close together." The victim walked in front and Trotto walked behind him. As they arrived at the car across the street, Trotto "steered" the victim toward the front seat and physically "ushered him" into the car. The defendant and Samia were "fucking [the victim] up" in the car when "it got out of hand," and Samia took out a gun and shot the victim. These facts provide sufficient evidence from which a jury could reasonably infer that the victim was constructively pulled from the bar, literally pushed into the car, and forcibly confined. . . .
>
> In addition, the Commonwealth introduced evidence that the victim left half a glass of beer, keys, cigarettes, money, and his Celtics jacket at the bar. There was testimony that the victim always had his cigarettes with him, was never known to leave a half a beer behind, and always wore his Celtics jacket. This evidence, viewed under the Latimore standard, and in conjunction with the evidence described above, further demonstrated that the victim had no intention of leaving the bar, and did not willingly enter the car or willingly stay therein. Viewed together with Trotto's coercive and physical actions, the totality of the evidence sufficed to prove the element of force beyond a reasonable doubt.

Fredette, 145 N.E.3d at 180 (footnote omitted). Fredette offers no evidence, let alone clear and convincing evidence, to rebut the presumptive correctness of the state court's determination of the facts. See 28 U.S.C. § 2254(e)(1). The MAC's decision satisfies the standard in Jackson because a "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 433 U.S. at 319. The decision does not show an "increment of incorrectness beyond mere error." Winfield, 775 F.3d at 8. Therefore, insufficiency of the evidence is not an adequate ground for granting habeas relief.

IV.    **CONCLUSION**

For the foregoing reasons, Fredette's Petition for Writ of Habeas Corpus [ECF No. 1] is **DENIED**.

## V. CERTIFICATE OF APPEALABILITY

The statute governing appeals of final orders in habeas corpus proceedings provides that a certificate of appealability ("COA") may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make a "substantial showing," a petitioner must demonstrate that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Muller v. Goguen, 385 F. Supp. 3d 121, 129–30 (D. Mass. 2019) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000) (internal quotation marks omitted)). "To meet the debatable-among-jurists-of-reason standard the petitioner must prove 'something more than the absence of frivolity or the existence of mere good faith.'" United States v. Cintron, 281 F. Supp. 3d 241, 242 (D. Mass. 2017) (quoting Miller-El v. Cockrell, 537 U.S. 322, 338 (2003)). In ruling on an application for a COA, a district court must indicate which specific issues satisfy the "substantial showing" standard. 28 U.S.C. § 2253(c)(3).

As stated above, Fredette has not made a substantial showing that he was denied a constitutional right. Therefore, the Court declines to issue a COA.

**SO ORDERED.**

Dated: March 31, 2025

/s/ Margaret R. Guzman
Margaret R. Guzman
United States District Judge

14